UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY CABAN,

    Plaintiff,

v.                                                                           Case No. 3:20cv2530-LC-HTC

C. MAIORANA, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION FOR DISMISSAL

Plaintiff Anthony Caban, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a civil rights complaint form under 42 U.S.C. § 1983. The complaint contained no factual allegations and, instead, appeared to be a request for approval to name John Doe defendants for unidentified claims. ECF Doc. 1. Upon review, the undersigned issued a Show Cause Order directing Plaintiff to show cause why Plaintiff should be allowed to amend his complaint.[1] ECF Doc. 3.

After the undersigned issued a report and recommendation for dismissal of the action based on Plaintiff's failure to respond to the show cause order, Plaintiff filed an amended complaint (ECF Doc. 7). The undersigned subsequently vacated

---

[1] Plaintiff was also directed to file a motion to proceed *in forma pauperis* or pay the entire filing fee if he wanted to proceed with the case. ECF Doc. 3.

the report and recommendation and the amended complaint was referred to the undersigned for preliminary screening under 28 U.S.C. § 1915. Upon review, the undersigned finds that the amended complaint also fails to state a cause of action against any of the Defendants. Accordingly, the undersigned recommends this action be dismissed as a second opportunity to amend would be futile.

## I.   BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Blackwater River Correctional Facility ("BRCF"). In his amended complaint, Plaintiff sues three (3) defendants: Warden Maiorana, Assistant Warden Neal, and Nurse Simpson, as well as two (2) John Doe guards. The following allegations are derived from Plaintiff's amended complaint.

Caban alleges that on June 3, 2019, "MD Nichols"[2] issued him a "health pass lower-tier, walker, and knee brace-ace bandage and no standing for more than 30 min." He alleges, "[t]hey stamped my pass that I got from Lake Butler as good to have." ECF Doc. 7 at 8.

In October of 2019, he went to sick call for a skin disease and was denied treatment by Nurse Simpson.[3] *Id.* Simpson noticed the knee brace and questioned Caban about it. She told Caban he did not need the brace and asked him where his

---

[2] He does not allege where Dr. Nichols worked.
[3] Although Caban several times mentions a lack of treatment for his skin condition, he does not make a claim based on it in his statement of claims.

walker was. He told her that he did not need the walker when he uses the brace. Nevertheless, the nurse ordered him to remove the brace and surrender it to her. Caban attempted to show her his pass, but she would not look at it. He then told her he would like to see the doctor, but she responded that he will never see the doctor.

He thus refused to remove the brace, so the nurse ordered a security officer to make Caban remove it. They threatened to put Caban into confinement for 30 days and cause him to lose gain time if he did not take off the brace. Caban then complied and asked for a cane to help walk, which was refused. He returned to his cell without the brace, having difficulty walking.

Caban complained to an unnamed Lieutenant, who said he could not do anything and ordered Caban to return to his dorm. When Caban returned to his cell, he learned that the nurse had ordered the walker removed from his cell as well. The officer took the walker and Caban back to medical. Caban asked the nurse about the walker, and she stated that she removed all of his walking aids because plaintiff "had been a smart ass to her."

Caban spoke to the Warden about a week later, who told Caban to file a grievance, which was denied. He then talked with Assistant Warden Neal, who simply told him to wait. He filed additional grievances and "was denied treatment again on 9-11-19." He alleges he has not received any mobility assistance, including

a cane "because of their own opinion not medical facts." He also claims he has not seen a doctor in 10-and-a-half months even though he repeatedly asked.

Plaintiff attaches his grievances and the responses to the grievances to his complaint and, thus, the undersigned considered them for purposes of this report and recommendation.[4] According to the Warden's response, Caban was evaluated by a clinician when he arrived at BRCF and found not to need a walker or a brace. ECF Doc. 7 at 13. Therefore, no medical pass was issued for the brace or walker, and both were contraband and were properly seized as such. *Id.* Also, the Warden responded that Caban had lied to the nurse by saying that his walker was broken and that's why he walked to medical for the skin condition. *Id.* Upon inspection, the walker was not broken. The Warden also responded that Caban lied that his previous medical pass was "lost" when really a new one had never been issued by BRCF upon arrival. *Id.* Also, the Warden stated that a cane was later requested but denied, "due to evaluation and xray." *Id.*

In his appeal to the Secretary Caban alleges, "[t]he only x[rays that [were] taken of my knew was when I was in the Marion Co. Jail . . . it was determined I need[ed] a[n] operation. When I was transferred to Lake Butler I saw the doctor

---

[4] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875 (11th Cir. 2016), quoting *SFM Holdings, Ltd. V. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

Case No. 3:20cv2530-LC-HTC

there. He stated my knee was really damaged and he put me in for more x-rays!" ECF Doc. 7 at 15. He also claimed, "I have a really hard time walking, by knee gives out and I fall. It is always painful." *Id.* at 16.

Caban brings five numbered claims in his "Statement of Claims" section. The first three appear to allege violations under the American with Disabilities Act ("ADA"), based on a "denial of [Caban's] medical rights," "auxiliary aids and services denied," and "healthcare appliances for mobility." *Id.* at 10. Caban also alleges violations of FDOC rules and regulations: one relating to "102.006" (a Florida prison procedure dealing with HIPAA and inmates) and one under FDOC regulations Chap. 33-401.701 (dealing with inmates' medical information and HIPAA). Also, reading his amended complaint liberally, it appears Caban may also be seeking to raise a claim of deliberate indifference to serious medical needs under the Eighth Amendment.

As relief, Plaintiff seeks the "covered entity take full responsibility for their poor judgment and to be compensated for there mistreatment of me due to my medical problems. And to fix what needs to be fix and a formal apologize for mistreating human being and pain I suffered." ECF Doc. 7 at 10.

## II.  STANDARD OF REVIEW UNDER 28 U.S.C. §§ 1915A AND 1915(e)

Because Plaintiff is a prisoner and is also proceeding *pro se*, the Court is required to review his complaint, identify cognizable claims and dismiss the

complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). Also, the Court must read Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

### A. Claims Under The ADA (Counts 1 through 3)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2).

Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. See 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a); *United States v. Georgia*, 546 U.S. 151, 153–54 (2006). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). The Supreme Court has previously held that this term includes state prisons. *See Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).

However, there is no individual capacity liability under Title II of the ADA. *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005). Thus, to the extent that Plaintiff seeks to hold the Warden, Assistant Warden, Nurse Simpson or the John Doe Guards liable in their individual capacities for violating the ADA, such claims fail as a matter of law. *See id.; Smith v. Rainey*, 747 F. Supp. 2d 1327, 1340 (M.D. Fla. 2010 ("It is settled that Title II of the ADA does not permit individual capacity suits").

To establish a Title II violation under a reasonable accommodation theory, a plaintiff must show (1) he is a qualified individual with a disability, (2) he is unable, because of his disability, to meaningfully access a public benefit to which he is entitled, and (3) the public entity failed, despite his request, to provide a reasonable accommodation for his disability. *See Nadler v. Harvey*, No. 06-12692, 2007 WL

2404705, at *5 (11th Cir. Aug. 24, 2007).  Plaintiff's ADA claim also fails as to these Defendants in their official capacities because Plaintiff fails to allege facts showing that he meets any of those three elements.[5]

First, Plaintiff does not allege that he is a "qualified individual with a disability" nor has he set forth facts from which such an inference can be made. Instead, Caban merely alleges that he has a hard time walking, that his knee gives out and he falls, and that it is painful. *See* 42 U.S.C. § 12102(1) (defining "disability" under the ADA).  Second, even if Plaintiff suffered from a disability, he does not allege that he was denied the benefit of any "service, program, or activity". *See* 42 U.S.C. § 12132.

Third, based on the facts alleged the Plaintiff has not shown that he was denied a reasonable accommodation.  To the contrary, the Warden's grievance responses show that Plaintiff was not in need of any accommodations at all.  *See Blue Tee Hotels Inv. (Canada), Ltd. V. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F. 212, 222 (2d Cir. 2004) (rejecting allegations that were "belied" by letters attached to the complaint); *Hamilton v. American Corrective Counseling Services, Inc.,* No. 3:05–CV–434RM, 2006 WL 3332828, 1 (N.D. of Ind. Nov. 14, 2006) ("If

---

[5] Additionally, because the ADA precludes discrimination by public entities and Plaintiff's claims involve decisions made at the institutional level, the Warden, in his official capacity, is the most appropriate defendant for purposes of this claim. *See Allen v. Rimbach*, 2019 WL 233216 at *2 fn. 1 (E.D. Cal. Jan. 16, 2019).

Case No. 3:20cv2530-LC-HTC

documents attached to the complaint contradict allegations in the complaint, the documents trump the allegations. In fact, '[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.'"). Based on the scarcity of Plaintiff's allegations and the fact that they are belied by the grievance responses, "the Court need not accept as true Plaintiff's legal conclusion that Defendants "violated" the ADA . . . ." *See Redding v. Georgia*, 2013 WL 2948110, at *10 (M.D. Ga. June 14, 2013), *aff'd,* 557 F. App'x 840 (11th Cir. 2014), citing *Iqbal,* 556 U.S. at 678, quoting *Twombly,* 550 U.S. at 555.

**B. Claims Under The Procedure 102.006 And FDOC Regulations (Counts 4 and 5)**

Plaintiff alleges that Defendants failed to follow a Florida prison procedure 102.006, and a regulation governing the FDOC, in Florida Administrative Code 33-401.701. An allegation of non-compliance with a prison or jail regulation by prison and jail officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (noting many prison regulations are "primarily designed to guide correctional officers in the administration of a prison" and "such regulations are not designed to confer rights on inmates); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (explaining that mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves

Case No. 3:20cv2530-LC-HTC

constitutional mandates."). Therefore, Plaintiff's allegations concerning a failure to follow policies and procedures in the executive order or regulations do not support a valid cause of action against Defendants.

### C. Eighth Amendment Deliberate Indifference To Serious Medical Need Claim

Although Plaintiff does not reference the Eighth Amendment in his amended complaint, because the Plaintiff is proceeding *pro se,* the undersigned nonetheless considered whether such a claim could be supported based on the facts alleged.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition is violated where prison officials act or fail to act with "deliberate indifference to serious medical needs" of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish deliberate indifference, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted). The Supreme Court has emphasized that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moreover, "[m]ere incidents of negligence or malpractice" in diagnosing or treating a medical condition "do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 105, 104-06 (1976)). Nor does a medical judgment call, or an accidental or inadvertent failure to provide adequate medical care, support a claim of cruel and unusual punishment. *Estelle*, 429 U.S. at 105-106.

To establish the first element of his claim, Caban must allege facts sufficient to infer that he suffered a serious medical need. "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted). "[A]n objectively serious medical need" is one so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor*, 221 F.3d at 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted).

As discussed above, Caban alleges that in June 2019, a doctor at a different institution issued him a pass for a walker or brace and that he has a "hard time walking." Although Caban alleges the pass was stamped when he arrived at BRCF, the grievance response from the Warden states that Caban was independently examined when he got to BRCF and it was determined that he did not need a walker

or brace. The grievance response thus shows that Plaintiff did not suffer from a serious medical need. Indeed, although Caban also complains that he has not been taken to a doctor for x-rays, he does not allege any facts showing why an x-ray is necessary or what is even wrong with his knee.

Regardless, even assuming Plaintiff suffered from a serious medical condition; he has not alleged facts to show that any of the Defendants were deliberately indifferent to him. First, he has alleged no facts showing that the Defendants were subjectively aware of a risk of serious harm to him. There are no allegations that he ever told Defendants why he needed a walker or brace (other than he had a pass for one, which was shown not to be true). For example, while he states in his appeal to the Secretary that his knees have been damaged, there are no allegations that he advised any of the Defendants of such damage or that such damage was visible. Similarly, while he alleges he has a hard time walking and that it is "always painful," there are no allegations that he shared any of that information with the Defendants.

Second, even if he had shared that information with the Defendants, Plaintiff has not alleged any facts to show that Defendants disregarded that risk by conduct that is more than mere negligence. At best, Plaintiff alleges that he disagreed with Defendants regarding whether he needed a walker, brace or cane. Indeed, Plaintiff states that "according to" Nurse Simpson, she did not believe he needed a brace.

ECF Doc. 7 at 8.  Moreover, as set forth in the Warden's response, the clinician examined Plaintiff upon his arrival at BRCF for passes and determined he did not need any.  While Plaintiff may disagree with that assessment, such disagreement does not support a claim for deliberate indifference.

### D. Supervisory Liability Claims Against The Warden And The Assistant Warden

Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Supervisory liability may occur only when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.*  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted).

Filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the

grievance, even if the grievance is denied.  *Wayne*, 197 F.3d at 1106; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  More particularly, a claim of medical indifference cannot generally be made against non-medical personnel unless they personally involved themselves with the denial of treatment or deliberately interfered with the medical treatment.  *Wheeler v. Corizon Med. Health Care Servs.*, No. 5:16CV96-LAC-EMT, 2016 WL 7404734, at *3 (N.D. Fla. June 7, 2016), *report and recommendation adopted*, No. 5:16CV96/LAC/EMT, 2016 WL 7404709 (N.D. Fla. Dec. 21, 2016) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

Supervisory prison officials are entitled to rely upon prison medical personnel to determine the medically proper course of treatment for an inmate.  *Id.*  Unless there is direct evidence to show that a warden or other supervisory official should not rely on this expertise, "it would be an unprecedented extension of the theory of supervisory liability to charge . . . wardens, not only with ensuring that [the inmate] received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures—procedures learned during several years of medical school, internships, and residencies." *Id.*; *see also Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1050 (11th Cir. 2014) (the law does not require that non-medical officials ignore the determination and recommendation of medical staff); *Dolihite v. Maughon ex rel. Videon*, 74 F.3d 1027, 1054–55 (11th Cir. 1996);

*Acosta v. Watts*, 281 F. App'x 906, 908 (11th Cir. 2008) (finding no liability against prison administrator where administrator's decision-making was grounded in decision made by medical personnel).

Plaintiff's allegations that he informed the Warden and Assistant Warden in person and then through grievances do not overcome this high barrier. He does not specify what he told them about his decision, and the grievances that he attached to his amended complaint show that the Warden expressly relied upon the medical decision of the doctor in denying the grievance. Therefore, Plaintiff has not alleged facts sufficient to show that the Warden or Assistant Warden participated in violating a constitutional right.

Similarly, Plaintiff has also not set forth facts sufficient to show a causal connection between these supervisors' conduct and any constitutional violation. Specifically, Plaintiff has alleged no "history of widespread abuse" or the existence of a "custom or policy" which "resulted in deliberate indifference to constitutional rights." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999). Instead, the circumstances alleged by Plaintiff constitute an isolated incident, which, alone, is insufficient to establish a supervisor's liability. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)) (the constitutional deprivations must be "obvious, flagrant, rampant and of continued duration").

## IV. CONCLUSION

As set forth above, Plaintiff has already been provided one opportunity to amend his complaint, and the Court considered his amended complaint even though it was belatedly filed. Thus, the undersigned finds that allowing Plaintiff a second bite at the apple would be futile given the deficiencies in Plaintiff's allegations, which are unlikely to be resolved even with a more carefully crafted complaint.

Accordingly, it is RESPECTFULLY RECOMMENDED that:

1. Plaintiff's amended complaint be dismissed under 28 U.S.C. § 1915A and 1915(e)(2).

2. The clerk be directed to close this case.

DONE AND ORDERED this 14th day of April, 2020.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.